```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| AETNA HEALTH INC. and AETNA LIFE INSURANCE COMPANY,<br><br>    Plaintiffs,<br><br>    v.<br><br>CAROLINA ANALGESIC, INC., SOUTHERN STATES ANALGESIC, INC., and ROBERT G. BAUER,<br><br>    Defendants. | Civil No. 13-7202 (NLH/AMD)<br><br>**OPINION** |

**APPEARANCES**:

EDWARD S. WARDELL
OLIVIA FRANCES CLEAVER
THOMAS VECCHIO
CONNELL FOLEY LLP
LIBERTY VIEW
457 HADDONFIELD RD., STE. 230
CHERRY HILL, NJ 08002
    On behalf of plaintiffs

JOHN W. LEARDI
PAUL D. WERNER
ALYSSA SAJCZUK
BUTTACI LEARDI & WERNER LLC
103 CARNEGIE CENTER
SUITE 323
PRINCETON, NJ 08540
    On behalf of defendants

**HILLMAN, District Judge**

Presently before the Court is the motion of defendants for summary judgment in their favor on plaintiffs' claims that defendants committed insurance fraud. For the reasons expressed below, defendants' motion will be continued pending further

briefing by the parties.

## BACKGROUND

Plaintiffs, Aetna Health Inc. and Aetna Life Insurance Company (hereinafter "Aetna"), contend that defendants, Carolina Analgesic, Inc. ("CAI"), Southern States Analgesic, Inc. ("SSAI"), and Robert G. Bauer, committed fraud when they submitted claims to Aetna for payment for durable medical equipment ("DME") – specifically transcutaneous electrical nerve stimulation ("TENS") devices and associated accessories[1] – that defendants provided to individuals who received Aetna health insurance. Aetna's claims against defendants center on defendants' $250 payments to chiropractors to refer their patients to defendants for the purchase of a TENS unit and necessary supplies (replacement electrodes and batteries), which Aetna classifies as a kickback, and defendants' coding and billing practices, which Aetna classifies as fraudulent claims.

Based on defendants' alleged conduct, Aetna has asserted six counts against defendants: Count One - Insurance Fraud, Count Two - Common Law Fraud, Count Three - Tortious Interference, Count Four - Conspiracy to Commit Common Law Fraud, Count Five - Unjust Enrichment, and Count Six - Negligent

---

[1] A TENS unit is a small battery powered device that is connected to electrodes and can be affixed to the patient's back with a belt. The electrodes carry an electric current from the TENS machine to the skin in order to relieve pain.

2

Misrepresentation.  Defendants have moved for summary judgment in their favor on all of Aetna's claims.  Aetna has opposed defendants' motion.

### DISCUSSION

**A.   Subject matter jurisdiction**

Defendants removed this action to this Court, claiming that the Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) because § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), completely preempts plaintiffs' state law claims.  Defendants' notice of removal further claims that this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because plaintiffs and defendants are citizens of different states, the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and because none of the named defendants are a citizen of the State of New Jersey.

Because the Court does not find that this case implicates ERISA,[2] the proper basis for subject matter jurisdiction is under

---

[2] Removal is only proper under 28 U.S.C. § 1331 if the plaintiff's cause of action is "one 'arising under' federal law."  Aetna Health Inc. v. Health Goals Chiropractic Ctr., Inc., No. CIV. A. 10-5216-NLH, 2011 WL 1343047, at *2 (D.N.J. Apr. 7, 2011) (quoting Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 398 (3d Cir. 2004) (citing 28 U.S.C. §§ 1331, 1441(a))).  The well-pleaded complaint rule regulates a court's determination of whether a cause of action arises under federal law.  Id. (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)).  "The

28 U.S.C. § 1332. According to the notice of removal, plaintiffs Aetna Health, Inc. and Aetna Life Insurance Company are Connecticut corporations each with its principal place of business in Hartford, CT.[3] Defendants Carolina Analgesic, Inc.

---

Supreme Court has recognized an exception to the well-pleaded complaint rule - the complete preemption exception - under which Congress may so completely pre-empt a particular area of law that any civil complaint raising this select group of claims is necessarily federal in character." Id. (quoting Dukes v. United States Healthcare, Inc., 57 F.3d 350, 354 (3d Cir. 1995)) (other citation omitted). Section 502(a) of ERISA "is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Id. (citations omitted). "As a result, state law causes of action that are within the scope of ... § 502(a) are completely pre-empted and therefore removable to federal court." Id. (citations omitted).

    In this case, because Aetna's claims (1) do not seek benefits under the terms of a plan, (2) do not seek the enforcement of a plan, (3) are not derived entirely from the particular rights and obligations established by a plan, and (4) require only a cursory review or consultation of a plan, if at all, Aetna's state law fraud-based claims are not preempted by ERISA. See id.

[3] The notice of removal states that Aetna Health Inc. is organized under the laws of Connecticut and has its principal place of business in Connecticut. (Docket No. 1 ¶ 7.) Aetna's amended complaint classifies Aetna Health Inc. as a "New Jersey corporation duly authorized to transact business in this state." (Docket No. 27 ¶ 15.) Regardless of whether Aetna is a citizen of Connecticut or New Jersey, diversity of citizenship exists to confer this Court's subject matter jurisdiction. Nonetheless, a party's citizenship must still be established concretely when the basis for jurisdiction is diversity of citizenship. Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) ("Federal courts are courts of limited jurisdiction, and when there is a question as to our authority to hear a dispute, 'it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition

and Southern States Analgesic, Inc. are corporations existing under the laws of the State of North Carolina, each with its principal place of business in Charlotte, NC. Defendant Robert G. Bauer is a citizen of the State of South Carolina.

B. **Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility

---

on the merits.'"). Moreover, the identification of the citizenship of Aetna is relevant to the choice of law analysis in this case. As fully explained below, the Aetna plaintiffs will be required to certify their citizenship, and, relatedly, articulate the proper state's law to be applied to their claims.

determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).  Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    C.    **Aetna's claims against defendants**

In order to be paid for the DME they supply to Aetna members, defendants submit claims forms (known as "CMS 1500") to Aetna for reimbursement.  These standard billing forms require providers to input numeric codes that describe the medical services for which the provider seeks payment so that an accurate determination can be made about whether payment is due.

6

Federal regulations designate the American Medical Association's Current Procedural Terminology ("CPT") and the CMS Common Procedure Coding System ("HCPCS") codes as the standard codes to be used on these forms. The individual indicated in Box 31 on the claim form certifies that the statements included in the claim are true and correct.

Aetna claims that defendants committed fraud, among other claims, in several ways:

(1) The rendering provider should be listed in Box 24J of the form and the DME supplier should be listed in Box 33, but on many occasions defendants listed themselves as the rendering provider.

(2) Defendants submitted claims for excessive and unnecessary equipment. For example, defendant SSAI supplied one Aetna member, J.S., with 40 units of electrodes and 4 batteries per month from March 2009 to September 2011, despite only ever receiving one physician's order for TENS treatment. This amounted to a total of 1,240 units of electrodes and 120 units of batteries over the course of 31 months. The electrode supply provided by SSAI should have lasted the Aetna member approximately fifty-one years and the battery supply should have lasted him approximately five years, as opposed to the actual two years and seven months he used the device.

(3) Defendants charged inflated prices. Defendants

7

routinely billed $450 and up to $700-900 for each TENS unit that cost $50 or less; billed $400 per month for electrodes that only cost $10; and $30 per month for batteries that cost $1.25 per unit.

    (4) Defendants entered into illegal "factoring" agreements with doctors. In order to bill for the professional services rendered by other providers, defendants entered into factoring agreements with physicians, whereby defendants paid medical providers $250 for every referral of an Aetna member. The factoring agreement specified that the medical providers were to provide the services associated with the initial application and set up of the TENS unit (the service normally billed under CPT Code 64550) but not bill Aetna for that service. Instead, the medical provider agreed to "assign" the right to bill that service to defendants in exchange for $250. Even though defendants contend that the $250 represents fair market value of the services provided by the physicians, evidence shows that defendants were reimbursed by Aetna far less than $250, which demonstrates fraudulent intent to provide kickbacks to doctors for their referrals.[4] But for the $250 kickback to the doctors,

---

[4] Aetna further claims that even though defendants submitted the $250 claim under CPT Code 64550, a professional services code, defendants' invoice for the $250 shows that only part of the $250 fee is actually for professional services. The invoice breaks the $250 into three sections: Administration ($150), Instructional Usage ($50), and Monitoring ($50).

8

the patients covered by Aetna would not have been directed by their doctors to obtain their TENS unit and supplies from defendants, which are out of Aetna's provider network.

(5) Defendants did not make any effort to recover from patients the difference between what they charged Aetna for the TENS unit and supplies, and what Aetna paid to defendants. As out-of-network DME suppliers, defendants were only entitled to be reimbursed for a certain percentage of the charges, and it was the patients' obligation to reimburse defendants for the remaining balance. The same is the case for the $250 charged for the physician's professional service of the TENS unit's initial set-up. The fact that defendants never sought to recover from the patients the difference between what defendants charged Aetna and what Aetna paid defendants demonstrates a fraudulent scheme to bilk Aetna. Without this fraud scheme, patients would have utilized an in-network DME, which would have reduced or negated the patients' cost-sharing obligations.

As a result of the kickbacks, inflated prices, and misrepresentations on the claim forms, Aetna contends that it paid defendants a total of $64,329.68 on claims for which defendants misrepresented themselves as the rendering provider of professional services described by CPT Code 64550, and it paid defendants a total of $1,767,081.41 on claims submitted by defendants for reimbursement for supplies that are directly

9

linked to the illegal kickback scheme. Aetna seeks to recover the $1,831,411.09 it paid to defendants based on their fraudulent conduct, as well as attorneys' fees, costs, and punitive damages. To that end, Aetna has asserted claims under New Jersey and North Carolina law for insurance fraud, common law fraud, tortious interference, conspiracy to commit common law fraud, unjust enrichment, and negligent misrepresentation.

**D.   Defendants' arguments in support of summary judgment**

Defendants have moved for summary judgment on all of Aetna's claims, arguing that no disputes of material fact exist. Addressing Aetna's allegations in the order set forth above, defendants argue that if they were listed as the rendering provider in Box 24J, it is inconsequential and not indicative of fraud because a physician actually rendered the TENS unit and supplies. It is not a situation where a DME supplier "prescribed" a TENS unit to a patient without a doctor's involvement, and fraudulently cast itself as a medical professional. Defendants argue that regardless of the name in Box 24J, a licensed healthcare provider actually provided the billed serviced, and therefore none of the claim forms can be considered fraudulent.

For Aetna's allegations that defendants submitted claims for excessive and unnecessary equipment at inflated prices, defendants argue that their charges for all the equipment was

10

completely open and transparent. Defendants argue that they applied the proper codes for the TENS unit, the pads, and the batteries, they indicated the true number of items sent to a patient, and they revealed the rate they were charging Aetna. With regard to Aetna's example of oversupply to patient J.S., defendants contend that nothing was hidden from Aetna when defendants billed Aetna for 1,240 units of electrodes and 120 units of batteries over the course of 31 months. The patient actually received these items. Defendants argue that if Aetna believes that it should not have paid these claims, it was Aetna's own fault for failing to evaluate the medical necessity of these items based on its own policies.

As for Aetna's claims that defendants committed fraud by entering into illegal factoring agreements with doctors, defendants argue that the $250 for the doctors' professional services in fitting TENS units is industry standard, and it is the exact amount charged to Aetna. Defendants further argue that Aetna's claims that defendants waived patient cost-sharing amounts for the professional services fee, as well as the TENS unit and supplies, is belied by the record evidence, which demonstrates that defendants sent bills to patients indicating the patient's cost-sharing obligations. Simply because defendants did not engage in aggressive bill collection efforts to recover unpaid cost-sharing delinquencies from patients does

11

not render their actions to constitute fraud on Aetna.[5]

**E.   Analysis**

As a primary matter, it is unclear to this Court which state's law should apply to Aetna's claims.  Aetna's complaint refers to New Jersey and North Carolina law, and defendants' summary judgment brief therefore performs a choice of law analysis between New Jersey and North Carolina law for each of Aetna's claims.  In response, Aetna argues that under any state's law, defendants' conduct can be considered fraud.

Even though Aetna filed its complaint in New Jersey state court, later removed by defendants to this Court, and the complaint references New Jersey law, it is unclear whether Aetna Health, Inc. is a citizen of Connecticut or New Jersey, as discussed, supra, note 3.  Defendants point out that there are 10,298 individual claims for services and supplies at issue in this case, representing patients living in: Alabama (314); Arkansas (52); Arizona (3); California (50); Connecticut (2); Florida (749); Georgia (768); Indiana (41); Louisiana (141); Massachusetts (5); Maryland (58); Michigan (38); Mississippi (74); North Carolina (193); Nebraska (3); New Jersey (269); New Mexico (29); New York (1297); Ohio (206); Oklahoma (16);

---

[5] Defendants state that they did not pursue collections activities on patients' delinquent accounts because past efforts to do so did not yield a return that justified the cost of pursuing the unpaid cost-sharing balances.

12

Pennsylvania (10); Rhode Island (26); South Carolina (143); Tennessee (32); Texas (4,772); and Virginia (965).  Although it makes sense for North Carolina law to apply to Aetna's claims against North Carolina defendants, it is not clear why Aetna has filed its case in a New Jersey court based on violations of New Jersey law in addition to North Carolina law, especially if Aetna is a citizen of Connecticut, and many other states are implicated by Aetna's claims.

Aetna is correct that the basic elements of general common law fraud are functionally identical throughout the United States.  The Court, however, cannot issue a decision as to whether defendants violated the "United States common law" of fraud, particularly when statutes of limitation or other elements of proving fraud may differ between states.  The Court also cannot opine, without the necessary claims in the complaint, as to whether defendants' actions violated various states' codified insurance fraud laws.  Moreover, Aetna has advanced claims for tortious interference, conspiracy to commit common law fraud, unjust enrichment, and negligent misrepresentation, and Aetna must perform an independent choice of law analysis on each of these claims.[6]

---

[6] If the Court or a jury were to find that defendants were liable to Aetna on one or more of its claims based on violations of a particular state's law, it is unclear whether Aetna's damages would need to be apportioned to account only for claims based on

13

In short, to properly support its claims and defeat summary judgment, Aetna must identify which state's laws defendants allegedly violated for each of its six counts in its complaint.[7] Following that analysis, Aetna must then demonstrate that disputed facts remain on each of its claims so that those claims may survive summary judgment and proceed to trial.[8]

---

violations of that state's law.  Different states' laws can apply to different claims in a single complaint.

[7] In diversity cases, federal courts apply the forum state's choice of law rules to determine which state's substantive laws are controlling.  Maniscalo v. Brother Int'l (USA) Corp., 709 F.3d 202, 206 (3d Cir. 2013)(citing Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496 (1941)).  In conducting the choice of law analysis, New Jersey employs the "most significant relationship" test of the Restatement (Second) of Conflict of Laws.  P.V. v. Camp Jaycee, 197 N.J. 132, 155, 962 A.2d 453 (2008) ("In balancing the relevant elements of the most significant relationship test, we seek to apply the law of the state that has the strongest connection to the case.").  This analysis, which must be performed on an issue-by-issue basis, consists of two steps.  First, the Court must determine whether an actual conflict exists between New Jersey law and the law of a competing state.  Snyder v. Farnam Cos., Inc., 792 F. Supp. 2d 712, 717 (D.N.J. 2011).  If no conflict exists, the Court applies the law of the forum state.  Id.  Second, if an actual conflict exists, the Court must determine which state has the most significant relationship to the claim.  Id.  In making this determination, the Court must weigh the factors set forth in the Restatement that correspond to the plaintiff's cause of action. Id.

[8] If Aetna's claims against defendants were solely premised on defendants' billing of Aetna for patients' TENS units and supplies, it does not appear that the record evidence supports Aetna's claims of fraud or other related claims.  Aetna has not shown that defendants' bills used improper codes to disguise charges that would not have been paid but for the intentional miscoding.  Instead, the evidence shows that defendants used proper codes to indicate the type, quantity, and price of DME

Consequently, the resolution of defendants' motion for summary judgment must be continued until the Aetna Health Inc. has (1) certified its citizenship,[9] and (2) articulated which state's law applies to each of its claims.  Aetna shall have 20 days to file its supplemental brief to address these two issues, and defendants shall have 14 days thereafter to file a response, if they choose to do so.

An appropriate Order will be entered.


Date:  June 15, 2016                    s/ Noel L. Hillman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.

---

provided to Aetna-covered patients for which defendants sought reimbursement.  It also appears, however, that disputed facts remain as to the propriety of the $250 fee defendants paid to doctors to steer patients to the out-of-network defendants.  It also appears that disputed facts remain as to the suggestion that defendants improperly waived the patients' cost-sharing responsibilities to drive business to them rather than to in-network DME providers.  When deciding a motion for summary judgment, the Court cannot credit defendants' legitimate rational for their actions over Aetna's contrary perception, and, thus, it appears that summary judgment may be denied at least in part.  But because Aetna must articulate the elements of its six claims based on a specific state's law, and provide the proof to support each of those elements, the Court makes no decision on the final resolution of defendants' motion for summary judgment at this time.

[9] 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . .").