```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| AETNA HEALTH INC. and AETNA LIFE INSURANCE COMPANY, | Civil No. 13-7202 (NLH/AMD) |
| Plaintiffs, | **OPINION** |
| v. |  |
| CAROLINA ANALGESIC, INC., SOUTHERN STATES ANALGESIC, INC., and ROBERT G. BAUER, |  |
| Defendants. |  |

**APPEARANCES**:

EDWARD S. WARDELL
MATTHEW A. BAKER
OLIVIA FRANCES CLEAVER
CONNELL FOLEY LLP
LIBERTY VIEW
457 HADDONFIELD RD., STE. 230
CHERRY HILL, NJ 08002
    On behalf of plaintiffs

JOHN W. LEARDI
PAUL D. WERNER
BUTTACI LEARDI & WERNER LLC
103 CARNEGIE CENTER
SUITE 323
PRINCETON, NJ 08540
    On behalf of defendants

**HILLMAN, District Judge**

    Presently before the Court is the motion of defendants for summary judgment in their favor on plaintiffs' claims that defendants committed insurance fraud. Previously, the Court continued defendants' motion pending further briefing by the

parties to answer two questions: (1) what is the citizenship of plaintiffs; and (2) what state's law should apply to plaintiffs' claims.  The parties complied with the Court's order and answered both questions.  The following Opinion restates the background and discussion section from the Court's prior Opinion (Docket No. 50) for ease of reference, and includes a substantive analysis of defendants' motion now that the jurisdictional and choice of law issues have been settled.[1]  For the reasons expressed below, defendants' motion will be granted in part and denied in part.

## BACKGROUND

Plaintiffs, Aetna Health Inc. and Aetna Life Insurance Company (hereinafter "Aetna"), contend that defendants, Carolina Analgesic, Inc. ("CAI"), Southern States Analgesic, Inc. ("SSAI"), and Robert G. Bauer, committed fraud when they submitted claims to Aetna for payment for durable medical equipment ("DME") – specifically transcutaneous electrical nerve stimulation ("TENS") devices and associated accessories[2] – that

---

[1] The choice of law issue has been agreed upon by the parties as to which state's law applies to plaintiffs' claims substantively.  The parties disagree on which state's law applies to any statute of limitations defenses that could be asserted by defendants.  The statue of limitations issue does not need to be resolved now, however, because defendants' motion for summary judgment does not raise any statutes of limitations as a basis for summary judgment at this time.

[2] A TENS unit is a small battery powered device that is connected

defendants provided to individuals who received Aetna health insurance.  Aetna's claims against defendants center on: a) defendants' $250 payments to chiropractors to refer their patients to defendants for the purchase of a TENS unit and necessary supplies (replacement electrodes and batteries), which Aetna classifies as a kickback, and b) defendants' coding and billing practices, which Aetna classify as fraudulent claims.

Based on defendants' alleged conduct, Aetna has asserted six counts against defendants: Count One - Insurance Fraud, Count Two - Common Law Fraud, Count Three - Tortious Interference, Count Four - Conspiracy to Commit Common Law Fraud, Count Five - Unjust Enrichment, and Count Six - Negligent Misrepresentation.  Defendants have moved for summary judgment in their favor on all of Aetna's claims.  Aetna has opposed defendants' motion.

## DISCUSSION

**A.   Subject matter jurisdiction**

Defendants removed this action to this Court, claiming that the Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) because § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §

---

to electrodes and can be affixed to the patient's back with a belt.  The electrodes carry an electric current from the TENS machine to the skin in order to relieve pain.

3

1132(a)(3), completely preempts plaintiffs' state law claims. Defendants' notice of removal further claims that this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because plaintiffs and defendants are citizens of different states, the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and because none of the named defendants is a citizen of the State of New Jersey.

Because the Court does not find that this case implicates ERISA, see Docket No. 50 at 3 n.2, the proper basis for subject matter jurisdiction is 28 U.S.C. § 1332. Plaintiffs have provided a certification that Aetna Health, Inc. is a New Jersey corporation with its principal place of business in New Jersey, and Aetna Life Insurance Company is a Connecticut corporation with its principal place of business in Hartford, Connecticut. Defendants Carolina Analgesic, Inc. and Southern States Analgesic, Inc. are corporations existing under the laws of the State of North Carolina, each with its principal place of business in Charlotte, North Carolina. Defendant Robert G. Bauer is a citizen of the State of South Carolina.

    **B.**    **Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or

4

interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict

5

those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### C. Aetna's claims against defendants

In order to be paid for the DME they supply to Aetna members, defendants submit claims forms (known as "CMS 1500") to Aetna for reimbursement. These standard billing forms require providers to input numeric codes that describe the medical services for which the provider seeks payment so that an accurate determination can be made about whether payment is due. Federal regulations designate the American Medical Association's Current Procedural Terminology ("CPT") and the CMS Common Procedure Coding System ("HCPCS") codes as the standard codes to be used on these forms. The individual indicated in Box 31 on the claim form certifies that the statements included in the claim are true and correct.

Aetna claims that defendants committed fraud, among other claims, in several ways:

(1) The rendering provider should be listed in Box 24J of the form and the DME supplier should be listed in Box 33, but on many occasions defendants listed themselves as the rendering provider.

(2)  Defendants submitted claims for excessive and unnecessary equipment.  For example, defendant SSAI supplied one Aetna member, J.S., with 40 units of electrodes and 4 batteries per month from March 2009 to September 2011, despite only ever receiving one physician's order for TENS treatment.  This amounted to a total of 1,240 units of electrodes and 120 units of batteries over the course of 31 months.  The electrode supply provided by SSAI should have lasted the Aetna member approximately fifty-one years and the battery supply should have lasted him approximately five years, as opposed to the actual two years and seven months he used the device.

(3) Defendants charged inflated prices.  Defendants routinely billed $450 and up to $700-900 for each TENS unit that cost $50 or less; billed $400 per month for electrodes that only cost $10; and $30 per month for batteries that cost $1.25 per unit.

(4)  Defendants entered into illegal "factoring" agreements with doctors.  In order to bill for the professional services rendered by other providers, defendants entered into factoring agreements with physicians, whereby defendants paid medical providers $250 for every referral of an Aetna member.  The factoring agreement specified that the medical providers were to provide the services associated with the initial application and set up of the TENS unit (the service normally billed under CPT

7

Code 64550) but not bill Aetna for that service. Instead, the medical provider agreed to "assign" the right to bill that service to defendants in exchange for $250. Even though defendants contend that the $250 represents fair market value of the services provided by the physicians, evidence shows that defendants were reimbursed by Aetna far less than $250, which demonstrates fraudulent intent to provide kickbacks to doctors for their referrals.[3] But for the $250 kickback to the doctors, the patients covered by Aetna would not have been directed by their doctors to obtain their TENS unit and supplies from defendants, which are out of Aetna's provider network.

(5) Defendants did not make any effort to recover from patients the difference between what defendants charged Aetna for the TENS unit and supplies, and what Aetna actually paid to defendants. As out-of-network DME suppliers, defendants were only entitled to be reimbursed for a certain percentage of the charges, and it was the patients' obligation to reimburse defendants for the remaining balance. The same is the case for the $250 charged for the physician's professional service of the TENS unit's initial set-up. The fact that defendants never

---

[3] Aetna further claims that even though defendants submitted the $250 claim under CPT Code 64550, a professional services code, defendants' invoice for the $250 shows that only part of the $250 fee is actually for professional services. The invoice breaks the $250 into three sections: Administration ($150), Instructional Usage ($50), and Monitoring ($50).

sought to recover from the patients the difference between what defendants charged Aetna and what Aetna paid defendants demonstrates a fraudulent scheme to bilk Aetna. Without this fraud scheme, patients would have utilized an in-network DME, which would have reduced or negated the patients' cost-sharing obligations.

As a result of the kickbacks, inflated prices, and misrepresentations on the claim forms, Aetna contends that it paid defendants a total of $64,329.68 on claims for which defendants misrepresented themselves as the rendering provider of professional services described by CPT Code 64550, and it paid defendants a total of $1,767,081.41 on claims submitted by defendants for reimbursement for supplies that are directly linked to the illegal kickback scheme. Aetna seeks to recover the $1,831,411.09 it paid to defendants based on their fraudulent conduct, as well as attorneys' fees, costs, and punitive damages. To that end, Aetna has asserted claims for insurance fraud, common law fraud, tortious interference, conspiracy to commit common law fraud, unjust enrichment, and negligent misrepresentation.

D. **Defendants' arguments in support of summary judgment**

Defendants have moved for summary judgment on all of Aetna's claims, arguing that no disputes of material fact exist. Addressing Aetna's allegations in the order set forth above,

9

defendants argue that if they were listed as the rendering provider in Box 24J, it is inconsequential and not indicative of fraud because a physician actually rendered the TENS unit and supplies. It is not a situation where a DME supplier "prescribed" a TENS unit to a patient without a doctor's involvement, and fraudulently cast itself as a medical professional. Defendants argue that regardless of the name in Box 24J, a licensed healthcare provider actually provided the billed serviced, and therefore none of the claim forms can be considered fraudulent.

For Aetna's allegations that defendants submitted claims for excessive and unnecessary equipment at inflated prices, defendants argue that their charges for all the equipment was completely open and transparent. Defendants argue that they applied the proper codes for the TENS unit, the pads, and the batteries, they indicated the true number of items sent to a patient, and they revealed the rate they were charging Aetna. With regard to Aetna's example of oversupply to patient J.S., defendants contend that nothing was hidden from Aetna when defendants billed Aetna for 1,240 units of electrodes and 120 units of batteries over the course of 31 months. The patient actually received these items. Defendants argue that if Aetna believes that it should not have paid these claims, it was Aetna's own fault for failing to evaluate the medical necessity

10

of these items based on its own policies.

As for Aetna's claims that defendants committed fraud by entering into illegal factoring agreements with doctors, defendants argue that the $250 for the doctors' professional services in fitting TENS units is industry standard, and it is the exact amount charged to Aetna. Defendants further argue that Aetna's claims that defendants waived patient cost-sharing amounts for the professional services fee, as well as the TENS unit and supplies, is belied by the record evidence, which demonstrates that defendants sent bills to patients indicating the patient's cost-sharing obligations. Simply because defendants did not engage in aggressive bill collection efforts to recover unpaid cost-sharing delinquencies from patients does not render their actions to constitute fraud on Aetna.[4]

**E. Analysis**

In the Court's prior Opinion, the Court found that it could not assess the viability of Aetna's claims because Aetna's complaint referred to New Jersey and North Carolina law, defendants' summary judgment brief performed a choice of law analysis between New Jersey and North Carolina law for each of Aetna's claims, and Aetna's reply argued that under any state's

---

[4] Defendants state that they did not pursue collections activities on patients' delinquent accounts because past efforts to do so did not yield a return that justified the cost of pursuing the unpaid cost-sharing balances.

law, defendants' conduct can be considered fraud.  The Court therefore determined that in order for Aetna to properly support its claims and defeat summary judgment, Aetna must identify which state's laws defendants allegedly violated for each of its six counts in its complaint, and then it must demonstrate that disputed facts remain on each of its claims so that those claims may survive summary judgment and proceed to trial.

In their supplemental submission, the parties have agreed that North Carolina law should apply to Aetna's claims.[5]  (Docket No. 57.)  Thus, applying North Carolina law to each of Aetna's claims, the Court finds that defendants are entitled to summary judgment on Aetna's claims for statutory insurance fraud (Count One) and tortious interference with contract (Count Two).  Aetna's claims against defendants for common law fraud (Count Two) and conspiracy to commit fraud (Count Four), unjust enrichment (Count Five), and negligent misrepresentation (Count Six) survive summary judgment on two bases: the $250 fee to medical providers and the waiver of patient cost-sharing.

Under N.C. Gen. Stat. § 58-2-161, a civil action for a party's false statement to procure insurance benefits may be

---

[5] As noted above, see supra note 1, the parties do not agree on which state's law applies to any statute of limitations defense that could be raised by defendants.  That issue is not currently before the Court.

maintained "only after the defendant has been convicted of criminal insurance fraud." Harleysville Mut. Ins. Co. v. Gray, 2012 WL 2568147, at *6 (W.D.N.C. July 2, 2012) (rejecting the plaintiff's argument that the statute merely provides that a criminal conviction under the statute is admissible evidence in a civil action based on the statute and does not require a conviction before a civil action can be brought). Aetna has not provided evidence that defendants have been convicted of criminal insurance fraud. Consequently, defendants are entitled to summary judgment as to Count One of plaintiffs' complaint.

Defendants are also entitled to summary judgment on Aetna's tortious interference with contract claim. Under North Carolina law, the elements of tortious interference with contract are: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff. Embree Const. Grp., Inc. v. Rafcor, Inc., 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (citations omitted). Aetna claims that defendants induced Aetna's subscribers and medical providers to use them as their DME supplier, and these actions by defendants caused damage to Aetna by way of having to pay excessive charges. In

other words, if defendants did not bribe medical providers to direct their patients to defendants for their TENS units and supplies, the patients would have selected in-network DME providers, which presumably would not have over-charged Aetna. This claim is too attenuated to stand.

Accepting as true that defendants' bribes to doctors resulted in patients choosing defendants to provide their TENS units and supplies, the record evidence shows that it is the patients who would be harmed by this interference. By choosing an out-of-network DME provider, patients were responsible for the difference between the allowable in-network charge and what defendants' charged. That defendants intentionally induced third parties (i.e., Aetna's subscribers) to select an out-of-network DME provider does not support a finding that the Aetna subscribers did not perform the contract. The contract between Aetna and its subscribers does not require that they must select an in-network DME supplier. Thus, Aetna has not provided sufficient evidence to support its claim that defendants' interference with Aetna's contract with its subscribers caused the subscribers not to perform under the contract to Aetna's detriment.

Aenta's fraud-based claims survive summary judgment, but only for two parts of Aetna's alleged scheme. The essential elements of actionable fraud under North Carolina law are: (1)

14

false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.  Cobb v. Pennsylvania Life Ins. Co., 215 N.C. App. 268, 277, 715 S.E.2d 541, 549 (2011) (citation omitted).  Any reliance on alleged false representations must be reasonable; reliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate.  Id. (citations omitted).  The elements of a civil conspiracy to commit fraud are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the co-conspirators; and (4) pursuant to a common scheme.  Smallwood v. Irwin Mortgage Co., 2013 WL 4735877, at *3 (E.D.N.C. Sept. 3, 2013) (Privette v. Univ. of North Carolina, 96 N.C. App. 124, 139, 385 S.E.2d 185 (1989)).

    The tort of negligent misrepresentation sounds in fraud.  Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 727 (M.D.N.C. 2015) (citations omitted).  This tort occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care.  Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612

15

(1988).  "'Justifiable reliance is an essential element of both fraud and negligent misrepresentation.'"  Cobb v. Pennsylvania Life Ins. Co., 215 N.C. App. 268, 277, 715 S.E.2d 541, 549–50 (2011) (quoting Helms v. Holland, 124 N.C. App. 629, 635, 478 S.E.2d 513, 517 (1996)).

After a thorough review of the parties' briefs and record evidence, it is clear that Aetna's claims against defendants based solely on defendants' billing of Aetna for patients' TENS units and supplies do not meet the elements of fraud or negligent misrepresentation.  As noted in the Court's prior Opinion, Aetna has not shown that defendants' bills used improper codes to disguise charges that would not have been paid but for the intentional miscoding.  The evidence shows that defendants used proper codes to indicate the type, quantity, and price of DME provided to Aetna-covered patients for which defendants sought reimbursement.  Aetna has not provided sufficient evidence to go to a jury to refute that a reasonable investigation would have revealed the "excessive" and "medically unnecessary" charges by defendants.

The same holds true for the instances where defendants' bill provided their own DME supplier number instead of the actual performing provider's number in the rendering provider section of defendants' bill.  Aetna has not sufficiently refuted that in these instances a reasonable investigation would have

16

revealed the error, and Aetna has not sufficiently refuted that a medical professional actually rendered the service, despite the name in Box 24J.  This type of billing error does not independently support, on these facts, a claim of fraud or negligent misrepresentation.

Aetna, however, has provided sufficient disputed material facts to go to a jury on its fraud and negligent misrepresentation claims that concern the $250 fee to medical providers and waiver of the patients' cost-sharing responsibilities.  Aetna claims that defendants paid $250 to doctors to steer patients to the out-of-network defendants and assign their billing rights to defendants, all under the guise that the fee compensated the doctors for their services of prescribing a TENS unit to their patients, when in reality the fee was an inflated kick-back.  This first step of defendants' fraudulent scheme, Aetna claims, resulted in patients obtaining their TENS units and supplies from an out-of-network provider they would not have otherwise used, which was only acceptable to the patients because defendants waived the patients' costs arising out of their out-of-network cost-sharing responsibilities to Aetna.

Even though defendants have presented what they contend is a legitimate rational for their actions, a jury must decide whether defendants intentionally or negligently misrepresented

the purpose of the $250 fee and waiver of Aetna subscriber cost-sharing responsibilities. Based on the current record, the Court cannot credit defendants' perception of their actions over Aetna's.

As to Aetna's final claim for unjust enrichment, that claim may stand as a basis of relief in the alternative to its fraud-based claims. The North Carolina Supreme Court has established four requirements to prove unjust enrichment: (1) a party must have conferred a benefit on the other party; (2) the benefit must not have been offered officiously or gratuitously; (3) the benefit must be measurable; and (4) the defendant must have consciously accepted the benefit. Booe v. Shadrick, 322 N.C. 567, 369 S.E.2d 554, 556 (N.C. 1988).

"'The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated. More must be shown than that one party voluntarily benefited another or his property.'" Krawiec v. Manly, 2016 WL 374734, at *17 (N.C. Super. Jan. 22, 2016) (quoting JPMorgan Chase Bank, N.A. v. Browning, 230 N.C. App. 537, 542, 750 S.E.2d 555, 559–60 (2013) (citation omitted)). "A claim of this type is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." Hinson v. United Fin. Servs.,

18

Inc., 123 N.C. App. 469, 473, 473 S.E.2d 382, 385 (1996) (citation omitted). "The hallmark rule of equity is that it will not apply "'in any case where the party seeking it has a full and complete remedy at law.'" Id. (quoting Jefferson Standard Life Insurance Co. v. Guilford County, 225 N.C. 293, 300, 34 S.E.2d 430, 434 (1945)).

If Aetna's claims for fraud and negligent misrepresentation fail, Aetna may seek to prove its unjust enrichment claim regarding the $250 fee to medical providers and waiver of the patients' cost-sharing responsibilities.

## CONCLUSION

For the reasons expressed above, summary judgment must be entered in favor of defendants on Aetna's claims for statutory insurance fraud (Count One) and tortious interference with contract (Count Three).  Aetna's claims against defendants for common law fraud (Count Two) and conspiracy to commit common law fraud (Count Four), unjust enrichment (Count Five), and negligent misrepresentation (Count Six) survive summary judgment as to $250 fee to medical providers and waiver of the patients' cost-sharing responsibilities.

An appropriate Order will be entered.


Date:   October 19, 2016             s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.